### G. S. TURNER v. W. T. P. TURNER.

A person who, as agent of the guardian of a minor, collected money belonging to the minor, assumed a twofold responsibility, and is liable not only as agent for his principal, but also as a trustee for the minor; and if such person received illegal or depreciated currency in discharge of legacies or debts due the minor, he is liable in good money for the whole amount of such legacies or collections, and is also liable for interest thereon if he has been derelict in accounting, etc.    Therefore, when suit was brought against such a trustee by or in behalf of his *cestui que trust,* it was no defense for him to allege that he had received Confederate money and depreciated bank notes; and when evidence of such an allegation had gone to the jury, it was not error for the court to withdraw from the jury all consideration of this attempted defense.

APPEAL from Colorado.    Tried below before the Hon. L. Lindsay.

This suit was brought by P. ·D. Turner, as guardian of the appellee, to the spring term, 1869, of the District Court.    The appellee attained his majority, pending the case in the court below, and thereafter it proceeded to judgment in his own name.    The money sued for was the proceeds of a legacy left to the appellee by his grandfather, and which the appellant, acting as agent for P. D. Turner, the guardian of the appellee, received from the grandfather's executors in Louisiana bank

notes and in Confederate money, at different dates between January, 1860, and February, 1863. One of the executors testified that the Confederate money was paid on the order and direction of P. D. Turner, the guardian; but this, it seems, was irrelevant or of no legal significance. Other details of the case are stated in the arguments of counsel.

*R. V. Cook*, for the appellant.

The district judge charged the jury as follows, to wit:

"In regard to the question about the Confederate money "spoken of in the deposition of the witness, the court instructs "you, you should disregard it altogether, as the receipts them- "selves admit receiving so many dollars as a trust fund for the "benefit of a minor.

"L. LINDSAY, Judge of 21st District."

The court refused to give this charge:

"In this cause the defendant asks the court to charge the "jury that it is their duty to inquire, under the evidence before "them, as to the value of the alleged payment in Louisiana bank "bills, if there is any testimony before the jury going to show "the value of said bank bills at the time of payment of the same. "The court cannot judicially know that Louisiana bank money, "paid in 1860, is of par value with the currency of the United "States, unless some evidence is adduced to show its value at the "time of payment, or to show the value of the same in the pres- "ent currency of the country."

The charge which the court did give is tantamount to telling the jury to bring in a verdict for the plaintiff, and is clearly erroneous. (Paschal's Digest, Article 1446; Blanchet *v.* Davis, 3 Texas, 142.)

His charge to the jury is open to further criticism:

*First.* It assumes that the funds received by the defendant below were *trust funds*.

*Second.* It assumes that the payment to an disinterested party of Confederate money in an adjustment of a claim wherein a minor may have an interest—although the party receiving the funds may do so at the special instance of the minor's guardian, does nevertheless make the receiver responsible afterwards to the guardian (and without fraud or conversion) for the payment in United States currency. I feel sure that the mere statement before this learned court of these singular propositions is enough to show their rottenness. Appellant took the money as an act of kindness, and at the special request of the appellee's guardian. His reception of the money was a mere *gratuity* and without consideration. He had never made use of it. But the guardian and his ward refused to take their own, electing to claim the funds *bailed* to the appellant in the lawful currency of the United States. And the court below sustained this anomalous demand. Although the defendant made a tender in court of the Confederate money that he had received, it was rejected, and judgment given against him for an equivalent sum in United States currency, and that too in the absence of all fraud, failure to pay over on demand, conversion, or any wrong or misconduct upon his part.

*Third.* It is assigned for error that the judge refused to give the charge quoted above. The sum set forth in the receipts of 1860 were shown to be in Louisiana bank bills. But the pleadings are silent as to their value—or whether they had any value. Nor are we enlightened upon the point by a single ray of testimony. It seems that the court below, as well as plaintiff's counsel, regarded it as a foregone conclusion that Louisiana bank bills of 1860 were of par value with United States currency of 1870.

It was for the purpose of arresting the court's attention that the above charge was requested. It was refused. This was error. That such money as Louisiana bank bills circulated in Texas in 1860, and that its value then was equivalent to greenbacks of the present day are all matters of fact to be alleged

and proved. The court could take judicial cognizance of no such things. (1 Greenleaf on Eq., 4, 5, 6, 6a; Idem III.; 269, 270, 271.)

The money received by appellant was not *trust funds*, as the judge seemed to think. The delivery of the Confederate money to appellant was simply a bailment. And he was a *bailee* without hire. The money bailed was at all times subject to the order of the appellee's guardian. He was responsible for the same and other assets upon his bond. "Where a thing is " placed with a *depositary*, to be kept for a time, and 'returned " when called for, *the depositary to have no compensation*, the " benefit of the transaction is wholly on the side of the bailor, " and the bailee is liable only for gross negligence." (Parsons on Con. [5th ed.] II., 89, *et seq.*) The definition here given by this author covers the case of the appellant. He was not the trustee of a trust fund. He was a mere depositary, and only bound to deliver the thing *bailed*. "It may be considered as settled " in this country that a bailee, bound to deliver goods on demand, " discharges his obligation by delivering or tendering them where " they are or at his own residence or place of business; but de- " mand may be made on him elsewhere." (Parsons on Con. [5th ed.] p. 94.

But in this case the depositary was held responsible, not for the " thing bailed," but for a totally different thing, *with interest from the date of bailment*. That a bailee should have to pay *interest* is a thing unheard of under the sun! Here we find a bailee adjudged to pay interest in good funds on a bailment of Confederate money.

The citation of authorities to show the utter illegality of such a judgment is a useless waste of time.

I frankly concede that if the appellant had refused the funds on deposit; or if he had embarked them in some scheme of his own; or if he had misapplied; or been guilty of any fraudulent conduct respecting the same, the case would have presented different features. But nothing of the kind was proved nor attempted to be proved. A critical examination of the state-

ment of facts is respectfully invited to test the accuracy of this statement.

*Lastly,* with respect to interest: " Interest is a creature of " the statute, and cannot be given in a case not embraced in its " terms." (Close *v.* Fields, 2 Texas, 238.) " The mere fact of an " administrator holding assets in his hands is not enough to give " a right to demand interest of him." (Davis, Administrator *v.* Thorn and wife, 6 Texas, 482.)

*Wells Thompson* and *J. R. Burns,* for the appellee.

As will be presently seen, even if the defendant had received but trash—chips and whetstones—instead of " dollars," still he would be liable to pay in " dollars "—legal tender money of the country.

The error of appellant grows out of his total misconception of the law of the case. He strangely imagines that he was but a *bailee*—that the payment to him was but a *deposit*. The transaction has not in it a single ingredient of the law of bailment. The law applicable is that of agency—fiduciary agency —trusteeship. The appellant was a special agent for a particular thing—the collection of the distributive portion due a minor, in *money,* from his grandfather's estate. It was not property but *money* that was due, and not property but *money* to be collected. Appellant's business and duty was to collect money, good money, and nothing else; and if he collected anything else than good money, legal tender money, he is responsible.

A special agency is said properly to exist when there is a delegation of authority to do a single act. It is confined to a particular transaction. (*Vide* Story on Agency, Redfield & Herrick's edition, Sec. 17; Paley on Agency, by Lloyd, 3d edition, 199 and Note.) Any special authority must be strictly pursued. (1 Parsons on Contracts, 42.) An agent specially employed to receive payment in *money* cannot vary from his authority by receiving *a bill,* or any other thing. If he do, he is liable.

(Dunlap's Paley on Agency, 291 and Note.) If an agent improperly withhold the money of his principal, he is made liable for the ordinary interest of the country. (Story on Agency, Redfield & Herrick's edition, Sec. 222.)

The law of the case is too plainly stated by the text writers to justify a general reference to adjudications. One or two, however, from our own reports, will be given.

Where there is no contract, express or implied, to the contrary, it is the duty of the agent to pay over money collected by him within a reasonable time, and on his failure so to do an action will lie against him without a previous demand. (Mitchell *v.* McLemore, 9 Tex., 151.)

The language of the court in a former case is so exactly appropriate to this as to justify its literal quotation : " There is " nothing in the evidence to warrant the belief that the agent " had authority to receive payment otherwise than in the ordi- " nary mode of business, and that is to receive it in *money only*. " (Story on Agency, Sections 98, 99, 181 ; Robson *v.* Watts, 11 " Tex., 764.) There may be circumstances that will vary this " duty, but there are none such in this case." (McAlpin *v.* Cassady, 17 Tex., 462.)

The Confederate money in the present case was not forced upon appellant. He was not even persuaded to accept it. Its reception by him was a matter of negotiation and arrangement of his own. He had but to say to the executors, " I want only " good money," and it was his. At best, it was but a small sum —one-fourth of eight hundred dollars at one time and one hundred and fifty dollars at another ; total three hundred and fifty dollars—that appellant received in Confederate money, and this he took at " par," and converted it (of course, at par) to his own use.

He has never tendered any money, nor brought any into court. He has been waiting for a *demand !.* The appellant, by his receipt to the executors, has released them. The contract is executed. The estate they represented is distributed and closed, and it will certainly not be permitted appellant to

escape an affirmance of the judgment. The case is too plain for discussion.

Ogden, J. There would appear to be no difficulty in ascertaining the true character of G. S. Turner, the appellant in this cause, in collecting and receipting for the money for which he is charged in this suit. At the request of P. D. Turner, he undertook to represent the guardian of a minor heir, in the settlement of an estate of which the ward was entitled to a distributive share. He received the several sums of money in the name and place of the guardian, and was, therefore, to all intents and purposes, acting as the agent of P. D. Turner, the guardian, and as such was bound to a faithful performance of all the duties of a special agent, or agent for a special purpose. And in the collection and receipting for money belonging to a ward of his principal, he assumes a twofold responsibility, that of agent for his principal, and trustee for the minor; and he may be held to a strict responsibility as either.

As an agent with specific and limited power and duty, he is bound to perform that duty in strict conformity with the will or instructions of his principal. But as trustee he is also bound to act for the best interest of his *cestui que trust*, and is responsible for any breach of the trust, and for any loss which may accrue to the trust estate from his neglect, carelessness, or want of proper management; and when he has received money belonging to the estate, he is chargeable not only for the principal, but in many instances with interest, and especially where he has failed to pay over, or promptly and faithfully account for, all money that may have come into his hands.

In the case at bar, the appellant was acting more especially in the capacity of trustee for the minor, W. T. P. Turner. His guardian had joined the army and left the State during the time of a great war, and appellant was left alone to look after and manage the estate. It follows that, in the collection of debts or annuities due the estate of the minor, if appellant received illegal or depreciated money he should be held responsible, not only

for the amount due in good money, but also for the interest on the same, from the time the trust estate was kept from the use of it. With this view of the law which should govern this case, we must decide that the court did not err in its charge to the jury in withdrawing from them every consideration of Confederate money. And it might very properly have withdrawn from them all consideration of depreciated money. If the appellant saw fit to receive in discharge of a just demand due the estate of the minor he represented illegal or worthless or even depreciated money, then he in law and equity should be held to make it good. We have discovered no error in the verdict of the jury or the judgment which would require a reversal of the same. The judgment is therefore affirmed.

Affirmed.